# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Jimmy Seward and Isaac Mesner,
individually and on behalf of
all others similarly situated,

           Plaintiffs,

v.

Midwest Communication Services, Inc.
and Dish Network Service, L.L.C.,

           Defendants.

Civil Action No.

## PLAINTIFFS' COLLECTIVE AND CLASS ACTION COMPLAINT

Jimmy Seward and Isaac Mesner ("Plaintiffs"), individually and on behalf of other similarly situated installation technicians, state as follows for their Complaint against Midwest Communication Services, Inc. ("Midwest Communication") and Dish Network Service, L.L.C. ("Dish") ("Defendants").

## PRELIMINARY STATEMENT

1. This is a putative class and collective action brought by Plaintiffs on behalf of themselves and all others similarly situated. Plaintiffs, and others similarly situated, worked for Defendants as installation technicians, or in similar titles, and were denied proper compensation as required by federal and state wage and hour laws.

2. Defendants misclassified Plaintiffs, and others similarly situated, as independent contractors and failed to pay them one and one-half times their regular rate of

pay for all hours worked over 40 and 48 in a workweek. Instead, Defendants paid them on a piece-rate/per task basis with no overtime premium.

3. Defendants also made unlawful deductions from the pay of Plaintiffs, and others similarly situated.

4. Plaintiffs seek overtime compensation for hours worked over 40 in a workweek pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* In accordance with § 216(b) of the FLSA, Plaintiffs bring this case as a putative collective action.

5. Plaintiffs seek overtime compensation for hours worked over 48 in a workweek pursuant to the Minnesota Fair Labor Standards Act, Minn. Stat. § 177.21, *et seq.* ("MFLSA"), and assert a violation of the recordkeeping requirements in Minn. Stat. § 177.30. Plaintiffs bring these claims as a putative Rule 23 class action.

6. Plaintiffs seek compensation for unlawful deductions from their pay pursuant to Minn. Stat. § 181.79. Plaintiffs bring this claim as a putative Rule 23 class action.

7. Plaintiff Seward brings an individual claim for Defendants' failure to pay his final paycheck pursuant to Minn. Stat. §§ 181.101 and 181.13.

## JURISDICTION & VENUE

8. This Court has subject matter jurisdiction under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, because Plaintiffs' claims arise under the FLSA. Additionally, this Court has personal jurisdiction over Defendants, since Defendants conduct business in the District of Minnesota.

9. This Court has supplemental jurisdiction, pursuant to 29 U.S.C. § 1367, over the state law claims, as the state and federal claims derive from a common nucleus of operative fact.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district.

## THE PARTIES

11. Plaintiff Jimmy Seward resides in Shoreview, Minnesota.  He worked for Defendants as an installation technician in Minnesota from approximately 2015 to approximately mid-September 2019.

12. Plaintiff Isaac Mesner resides in Cottage Grove, Minnesota.  He worked for Defendants as an installation technician in Minnesota from approximately June 2018 to mid-September 2019.

13. Midwest Communication Services, Inc. is a company incorporated in and registered to conduct business in Minnesota.  It is a satellite installation provider for Dish and provides satellite installation services to Dish customers throughout the state of Minnesota.

14. Defendant Dish Network Service, L.L.C. is a wholly-owned subsidiary of DISH Network Corporation, which, through its subsidiaries, provides satellite and streaming services to millions of customers across the United States, including in Minnesota.

15. Upon information and belief, Defendants each have annual gross volume of sales made or business done of $500,000 or greater in accordance with 29 U.S.C. § 203(s)(1)(A)(ii).

16. Plaintiffs are "employees" of Defendants within the meaning of the FLSA and were engaged in interstate commerce as defined by section 207(a)(1).

17. Defendants are covered employers as defined by 29 U.S.C. § 203(d).

18. Defendants have employed two or more persons, including Plaintiffs, who are or were "engaged in commerce or in the production of goods for commerce," or have had "employees handling, selling, or otherwise working on goods or materials that have been moved and/or produced for commerce by any person," as defined by 29 U.S.C. § 203(s)(1)(A)(i).

## COLLECTIVE AND CLASS ACTION DEFINITION

19. Plaintiffs seek to represent themselves and the following putative "FLSA Collective" and "Minnesota Rule 23 Class":

> All installation technicians, and those in similar roles, who worked for Defendants through Defendant Midwest Communication Services, Inc. at any time within three years prior to the filing of the Complaint to the date of final judgment.

## GENERAL FACTUAL ALLEGATIONS

20. Plaintiffs, and others similarly situated, worked for Defendants as installation technicians, installing Dish products and services for Dish customers.

21. Plaintiffs, and others similarly situated, were hired, and paid by Defendant Midwest Communication.

22. Defendant Midwest Communication misclassified Plaintiffs, and others similarly situated, as independent contractors.

23. Defendant Midwest Communication set Plaintiffs' pay rates, subjecting Plaintiffs, and others similarly situated, to the same non-negotiable pay rates and structure.

24. Defendant Midwest Communication classified Plaintiffs, and others similarly situated, as independent contractors.

25. Defendant Midwest Communication paid Plaintiffs, and others similarly situated, on a piece-rate/per task basis and did not pay an overtime premium for hours worked over 40 in a workweek.

26. Defendant Dish provided the daily work assignments and times to Defendant Midwest Communication. A manager for Defendant Midwest Communication conveyed those assignments to Plaintiffs, and others similarly situated, via a web portal.

27. Plaintiffs, and others similarly situated, were not allowed to reject jobs they were assigned and were required to complete them at the times and in the order dictated by Defendant Dish.

28. Defendant Midwest Communication generally expected Plaintiffs, and others similarly situated, to work weekdays and some weekend days.

29. Prior to driving to their first job, Plaintiffs would typically review their work orders, determine how long it would take to get to each job, and load their vehicle at home with the equipment needed for the jobs that day. This could take anywhere from a few minutes to up to 45 minutes or more depending on the jobs assigned and equipment needed.

30. Plaintiffs obtained the primary equipment (e.g. satellite dishes and receivers) used to complete their work from Defendant Dish.

31. Defendant Midwest Communication required Plaintiffs to pick up that equipment from storage units maintained by Defendant Midwest Communication.

32. Plaintiffs were required to purchase their own incidental materials such as zip ties, cables, fittings, and bolts.

33. Plaintiffs were provided a uniform that reflected the names of both Defendants.

34. Defendants expected Plaintiffs to log into the web portal by approximately 7 a.m. and typically start working by 9 a.m. at the latest. The specific time Plaintiffs started working was dependent on the work orders Defendants distributed to Plaintiffs via the web portal.

35. Defendants required Plaintiffs, and others similarly situated, to log in and out of work orders throughout the day, documenting when the work orders were opened and closed so that Defendant Dish could track their work.

36. Defendants expected Plaintiffs to go to each job and complete it within the time assigned by Defendant Dish.

37. Plaintiffs were not permitted to hire helpers.

38. Defendant Dish provided quotas that Plaintiffs, and others similarly situated, were supposed to reach.

39. Both Defendants supervised the work of Plaintiffs, and others similarly situated.

40. For instance, Defendant Midwest Communication attended to issues in the field with installation technicians and inspected damage. It also handled time off requests.

41. Defendant Dish reviewed the work of installation technicians through quality control checks.

42. Defendant Dish also managed the jobs Plaintiffs, and others similarly situated, were working, monitored their location and how long the jobs were taking, and re-assigned work orders to other technicians when necessary.

43. The work orders Defendants assigned and expected installation technicians to complete in a day routinely took more than 8 hours, at times taking Plaintiffs 10 or more hours per day to cumulatively complete.

44. Plaintiffs, and others similarly situated, also performed work at home at the end of the workday. For instance, they unloaded parts and equipment from the vehicles, and recorded their completed daily work orders and assigned task pay rate, in order to input them into a spreadsheet sent to Defendant Midwest Communication for payment.

45. They were also required to do occasional inventory checks at home, which required sorting and counting equipment to provide an accounting to Defendant Midwest Communication.

46. Defendant Midwest Communication required Plaintiffs, and others similarly situated, to attend work meetings on occasion.

47. Plaintiff Seward routinely worked approximately between 45 and 55 hours in a workweek on average. For example, during the workweek beginning April 8, 2019, he worked approximately 50 to 55 hours.

7

48.     Plaintiff Mesner routinely worked approximately between 45 and 55 hours in a workweek on average. For example, during the workweek beginning July 27, 2019, he worked approximately 55 hours.

49.     Defendants paid Plaintiffs by the task and did not compensate them with any overtime premium during these workweeks, or in any other workweeks.

50.     In addition to failing to pay Plaintiffs, and others similarly situated, overtime compensation, Defendants unlawfully made deductions from their pay in the form of "charge-backs." For example, if Defendants received a "trouble call" related to a service that an installation technician previously provided, they required that technician return to provide service. Defendants did not compensate technicians for the time spent working to resolve trouble calls on work orders to which they were initially assigned. If the original installation technician was not available and another installation technician was sent to the customer's residence to resolve the issue, Defendant Midwest Communication deducted a flat amount of pay (e.g. $45) from the installation technician who originally completed the work order. Defendant Midwest Communication also deducted pay from Plaintiffs for items such as being late to a customer's residence and missing remotes.

51.     Defendants were aware that Plaintiffs, and others similarly situated, worked over 40 and/or 48 hours per week and were not paid overtime, because Defendants scheduled and required Plaintiffs to complete assignments that resulted in overtime hours being worked. Defendants were also aware of the hours Plaintiffs, others similarly situated, worked because they tracked their work through the web portal.

52. Defendants knowingly, willfully, or in reckless disregard of the law, maintained an illegal practice of failing to pay Plaintiffs, and others similarly situated, all the wages they were owed.

53. For instance, Plaintiff Seward complained to Defendant Midwest Communication's owner, Scott Taylor ("Taylor"), and manager, Mike Jordan ("Jordan"), about his improper independent contractor status and about not being paid overtime pay when he worked over 40 hours in a week. Taylor and Jordan dismissed the complaints, telling Plaintiff Seward that it was just the way it works and that he could get a different job if he was not happy working for them.

54. Defendants did not keep accurate or complete records of the hours Plaintiffs, or others similarly situated, worked.

## FACTS RELATED TO PLAINTIFF SEWARD'S UNPAID WAGES CLAIM

55. Upon Plaintiff Seward's termination, Defendant Midwest Communication did not issue him his final paycheck as required by state law.

56. Plaintiff Seward contacted Taylor regarding the outstanding payroll check but received no response.

57. Plaintiff Seward contacted Jordan on multiple occasions regarding the paycheck, and Jordan replied that Taylor was holding it because Plaintiff Seward allegedly owed money for equipment.

58. Plaintiff Seward informed Jordan that he did not have any such equipment, but Jordan instructed him to stop contacting them and that he would not get his check.

9

59. In approximately mid-October 2019, Plaintiff Seward contacted the Minnesota Department of Labor to inquire about how to get his check. The Department of Labor recommended he contact the company in writing, requesting payment within 24 hours.

60. On October 25, 2019, Plaintiff Seward emailed Taylor requesting payment. He received no response.

61. Plaintiff Seward approximates his final paycheck should have been approximately $1,800.00.

## COLLECTIVE ACTION ALLEGATIONS

62. Pursuant to the FLSA, 29 U.S.C. § 216(b), Plaintiffs seek to certify the putative FLSA Collective defined above as a collective action.

63. Plaintiffs' consent forms are attached as Exhibit A. As this case proceeds, it is likely other individuals will join as opt-in Plaintiffs.

64. Upon information and belief, Defendants knew that Plaintiffs, and others similarly situated, performed work that required overtime pay. Defendants operated under a scheme to deprive these workers of their legally owed overtime compensation.

65. Defendants are jointly liable under the FLSA for failing to properly compensate Plaintiffs, and other similarly situated, their overtime premiums.

66. There are numerous similarly situated persons who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of court-supervised notice of this lawsuit and being given the opportunity to join. Others similarly

situated are known to Defendants and should be readily identifiable through Defendants' records.

## MINNESOTA RULE 23 CLASS ACTION ALLEGATIONS

67. Pursuant to Fed. R. Civ. P. 23(a) and 23(b), Plaintiffs seek to certify the claims of the putative Minnesota Rule 23 Class defined above as a class action.

68. The putative Minnesota Rule 23 Class is so numerous that joinder of all members is impracticable. While the precise number of class members has not been determined, on information and belief, at least 50 individuals worked in the putative Minnesota Rule 23 Class during the applicable statute of limitations period. Plaintiffs, and the putative Minnesota Rule 23 Class have been equally affected by Defendants' violations of law.

69. There are questions of law and fact common to the putative Minnesota Rule 23 Class that predominate over questions solely affecting individuals, including but not limited to the following:

    a. Whether Defendants misclassified Plaintiffs and the putative Minnesota Rule 23 Class as independent contractors;

    b. Whether Defendants violated Minnesota law for failing to pay Plaintiffs and the putative Minnesota Rule 23 Class overtime premiums;

    c. Whether Defendants made unlawful deductions from the pay of Plaintiffs and the putative Minnesota Rule 23 Class;

    d. Whether Defendants failed to keep the appropriate pay and hours related records for Plaintiffs and the putative Minnesota Rule 23 Class.

    e. Whether Defendants' conduct was willful; and

    f.   The proper measure and calculation of damages.

70. Plaintiffs' claims are typical of the putative Minnesota Rule 23 Class. Plaintiffs, like other members of the putative Minnesota Rule 23 Class, had the same job, were classified as independent contractors, and were paid the same way alleged to be unlawful in this Complaint.

71. Plaintiffs will fairly and adequately protect the interests of the putative Minnesota Rule 23 Class and have retained counsel experienced in complex wage and hour class and collective action litigation.

72. This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over questions affecting individual class members, and a class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context of wage and hour litigation, individual plaintiffs often lack the financial resources to vigorously prosecute separate lawsuits in federal court against corporate defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendants' policies and practices. There do not appear to be any difficulties in managing this class action.

73. Plaintiffs intend to send notice to all members of the putative Minnesota Rule 23 Class to the extent required by Fed. R. Civ. P. 23.

## CAUSES OF ACTION

### COUNT I – OVERTIME WAGES
### FAIR LABOR STANDARDS ACT – 29 U.S.C. § 201, *et seq.*
*On Behalf of Plaintiffs and the Putative FLSA Collective*

74. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

75. The FLSA requires employers to pay non-exempt employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked over 40 in a workweek. *See* 29 U.S.C. § 207.

76. Plaintiffs and the putative FLSA Collective were or are employees of Defendants within the meaning of the FLSA.

77. Defendants are or were employers of Plaintiffs and the putative FLSA Collective within the meaning of the FLSA, 29 U.S.C. § 203(d).

78. As a result of the misclassification of Plaintiffs and putative FLSA Collective as independent contractors and the failure to pay them an overtime premium for hours over 40 in a workweek as required by law, Defendants violated the FLSA, 29 U.S.C. §§ 207 and 215(a)(2).

79. Defendants' failure to comply with the FLSA overtime protections caused Plaintiffs and the putative FLSA Collective to suffer loss of overtime wages and interest thereon.

80. Defendants knew, or showed reckless disregard for the fact, that Plaintiffs and the putative FLSA Collective were not being paid proper overtime compensation in violation of the FLSA.

81. Upon information or belief, Defendants have not acted in good faith or with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA. As a result, Plaintiffs and the putative FLSA Collective are entitled to recover liquidated damages in an amount equal to unpaid overtime compensation permitted by 29 U.S.C. § 216(b). Alternatively, should the Court find that Plaintiffs and the putative FLSA Collective are not entitled to liquidated damages, then they are entitled to prejudgment interest at the applicable legal rate.

82. Plaintiffs, and the putative FLSA Collective, also seek attorneys' fees and costs from Defendants, as provided by the FLSA in section 216(b).

### COUNT II – OVERTIME WAGES
### MN FAIR LABOR STANDARDS ACT — MINN. STAT. § 177.21, *et seq.*
*On Behalf of Plaintiffs and the Putative Minnesota Rule 23 Class*

83. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

84. Plaintiffs and the putative Minnesota Rule 23 Class were or are employees of Defendants and Defendants were or are their employers. *See* Minn. Stat. §§ 177.23, 177.24, and 181.171, subd. 4.

85. The MFLSA, Minn. Stat. § 177.25, requires employers to pay non-exempt employees 1.5 times the regular rate of pay for all hours worked over 48 per workweek.

86. Defendants suffered and permitted Plaintiffs and the putative Minnesota Rule 23 Class to routinely work more than 48 hours in a workweek without proper overtime compensation as required by the MFLSA.

87. Defendants knew or showed reckless disregard for the fact that they failed to pay these individuals overtime compensation, constituting a willful violation of the MFLSA.

88. Defendants' failure to comply with the MFLSA overtime protections caused Plaintiffs and the putative Minnesota Rule 23 Class to suffer loss of wages and interest thereon.

89. Plaintiffs and the Minnesota Rule 23 Class are entitled to unpaid overtime, liquidated damages, and attorney's fees and costs under the MFLSA.

### COUNT III—UNLAWFUL DEDUCTIONS
### MINN. STAT. § 181.79
*On Behalf of Plaintiffs and the Putative Minnesota Rule 23 Class*

90. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

91. Plaintiffs and the putative Minnesota Rule 23 Class were or are employees of Defendants and Defendants were or are their employers. *See* Minn. Stat. §§ 177.23, 177.24, 181.79, and 181.171, subd. 4.

92. Minn. Stat. § 181.79(1) provides certain prohibitions on wage deductions.

93. By making deductions from the wages owed to Plaintiffs and the putative Minnesota Rule 23 Class in the form of charge-backs, without written consent and without a finding of liability by a court of competent jurisdiction, Defendants violated Minn. Stat. § 181.79.

94. Defendants' actions were willful and not a result of mistake or inadvertence.

95. As a direct result of Defendants' unlawful conduct, Plaintiffs and the putative Minnesota Rule 23 Class have suffered damages in an amount to be determined at trial.

### COUNT IV—FAILURE TO MAINTAIN RECORDS
### MINN. STAT. § 177.30
*On Behalf of Plaintiffs and the Putative Minnesota Rule 23 Class*

96. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

97. Plaintiffs and the putative Minnesota Rule 23 Class were or are employees of Defendants and Defendants were or are their employers. *See* Minn. Stat. §§ 177.23, 177.24, and 181.171, subd. 4.

98. Pursuant to Minn. Stat. § 177.30 employers are required to make and keep records as delineated therein, including but not limited to "the hours worked each day and each workweek by the employee."

99. Defendants unlawfully failed to maintain records of hours worked as required by Minn. Stat. § 177.30.

100. Defendants' actions were willful and not the result of mistake or inadvertence.

101. As a direct result of Defendants' unlawful conduct, Plaintiffs and members of the Minnesota Rule 23 Class have suffered damages in an amount to be determined at trial.

## COUNT V – FAILURE TO PAY WAGES PROMPTLY
## MINN. STAT. §§ 181.101 AND 181.13
### *On Behalf of Plaintiff Seward*

102. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

103. Plaintiff Seward was Defendants' employee and Defendants were his employer. *See* Minn. Stat. §§ 181.13, and 181.171, subd. 4.

104. Minnesota law requires the prompt payment of earned and unpaid wages and provides for a penalty for failure to make such payment. *See* Minn. Stat. §§ 181.13 and 181.101.

105. Defendants' refusal to issue Plaintiff Seward's final paycheck is a violation of those laws.

106. As a direct result of Defendants' unlawful conduct, Plaintiff Seward has suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves, and others similarly situated, pray for relief as follows:

1. Certification of a class action pursuant to Fed. R. Civ. P. 23;

2. Certification of a collective action pursuant to the FLSA;

3. Leave to add additional plaintiffs and/or state law claims by motion, the filing of written consent forms, or any other method approved by the Court;

4. The appointment of Plaintiffs as class representatives and their counsel as class counsel;

5. Judgment against Defendants for misclassifying Plaintiffs, and others similarly situated, as independent contractors;

6. Judgment against Defendants for failing to pay overtime owed under the FLSA;

7. Judgment against Defendants for failing to pay overtime owed under the MFLSA;

8. Judgment against Defendants for making deductions from the pay of Plaintiffs, and others similarly situated, in violation of Minnesota law;

9. Judgment against Defendants for violating the Minnesota record keeping requirements;

10. An award of overtime wages;

11. And award for unlawful deductions;

12. An award of liquidated damages;

13. A finding that Defendants' violations were willful;

14. An award of any pre- and post-judgment interest;

15. An award of reasonable attorneys' fees and costs; and

16. Such further relief as may be appropriate.

Dated: January 7, 2020	NICHOLS KASTER, PLLP

*/s/ Michele R. Fisher*
Michele R. Fisher, MN Bar No. 303069
fisher@nka.com
Jay E. Eidsness, MN Bar No. 0395347
jeidsness@nka.com
4600 IDS Center, 80 S. 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870

ATTORNEYS FOR PLAINTIFFS AND OTHERS SIMILARLY SITUATED